## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**GAF Materials LLC,**

    Plaintiff,

vs.

**Dmitry Lipinskiy and Roofing Insights, LLC,**

    Defendants.

Court File No.:


**COMPLAINT**

---

GAF Materials LLC ("GAF"), for its Complaint against Dmitry Lipinskiy and Roofing Insights, alleges as follows:

1.    Through a prolonged public smear campaign online in pursuit of a personal vendetta against GAF, Dmitry Lipinskiy and his company, Roofing Insights, have intentionally sought to cause harm to GAF by breaching a confidential September 19, 2017 Settlement Agreement and Release ("Settlement Agreement"), by defaming and disparaging GAF, by engaging in deceptive trade practices, and by interfering with GAF's economic advantage.

2.    Four years ago, in July 2016, when GAF did not renew Lipinskiy's membership in GAF's Certified Roofing Contractor Program, Lipinskiy threatened GAF that "it will be very damaging to GAF down the road if we don't work together."

3. Lipinskiy sought to make good on that threat and began an online campaign of making YouTube videos and other social media posts disparaging GAF. Lipinskiy's actions led to an arbitration against Lipinskiy that was ultimately resolved when Lipinskiy entered into the Settlement Agreement.

4. Three months ago, in July 2020, when GAF declined to participate in roofing product comparisons by Lipinskiy before the time Lipinskiy agreed upon in the Settlement Agreement, Lipinskiy threatened to "publish the full story about GAF."

5. Lipinskiy made good on that threat and continued Lipinskiy's online campaign of videos and other social media posts disparaging GAF on numerous social media platforms by both Lipinskiy and his company Roofing Insights.

6. Lipinskiy's postings include, for example, a video entitled "GAF Roofing: The Biggest Bully In Industry," in which Lipinskiy says that GAF is "run like a mafia," is "afraid of cameras," and has "shitty" manufacturing facilities and also refers to a GAF employee as "a liar," a meme comparing GAF to North Korea, and a video entitled "GAF Glenwood: Worst Roofing shingle in History!!!".

7. These willful actions by Lipinskiy are the basis of this Complaint.

## Parties

8. Plaintiff GAF Materials LLC is a Delaware limited liability company, with its principal place of business located at 1 Campus Drive, Parsippany, New Jersey.

2

9.     GAF is North America's largest roofing manufacturer and manufactures roofing shingles, including Timberline® shingles, and other roofing products.

10.     Defendant Dmitry Lipinskiy is an individual who resides at 10306 Hidden Oaks Lane North, Champlin, MN 55316–5531.

11.     Defendant Roofing Insights, LLC ("Roofing Insights") is a Minnesota limited liability company with a Registered Office Address of 454 West Eagle Lake Drive, Maple Grove, MN 55369 and a Principal Executive Office Address of 7308 Aspen Lane N STE 128, Brooklyn Park, MN 55428, according to records filed at the Minnesota Secretary of State.

12.     Roofing Insights was founded by Lipinskiy. Roofing Insights began with a YouTube channel and markets itself as education for roofers with the tagline "We Help Roofers Become Successful Business Owners." https://roofinginsights.com. Roofing Insights claims that it has "33,000+ subscribers on YouTube, and thousands of followers on Facebook, Instagram, and LinkedIn, we are a vital part of the roofing community."

**Jurisdiction and Venue**

13.     This Court has diversity subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount currently in controversy is at least $300,000 (well in excess of the $75,000 jurisdictional limits).

3

14.     This Court has personal jurisdiction over Lipinskiy because Lipinskiy is a resident of Minnesota.

15.     This Court has personal jurisdiction over Roofing Insights because Roofing Insights is a business created and operated in Minnesota.

16.     This Court is a proper venue for this action because the September 19, 2017 Settlement Agreement and Release, which resolved GAF's prior arbitration against Lipinskiy, provides that "the sole and exclusive jurisdiction for any legal proceeding arising out of or relating to the Agreement shall be the District Courts of the State or Minnesota, or where appropriate, the United States District Court for the District of Minnesota" (Settlement Agreement, Exhibit A, ¶ 22) and because Lipinskiy and Roofing Insights have committed tortious acts in this District.

## Background

17.     Storm Group Roofing, LLC ("Storm Group ") sought to participate in GAF's Certified Roofing Contractor Program and entered into a Certified Contractor Program Participation Agreement with GAF, through its President and owner, Lipinskiy, on May 29, 2014.

18.     On May 29, 2015, Storm Group, again through Lipinskiy, entered into a second Certified Contractor Program Participation Agreement with GAF to renew his status as a "Certified Roofing Contractor" for another one-year term.

19.     In the period leading up to the expiration of Storm Group's second term, Lipinskiy had begun to reach out to members of GAF's local sales force to

4

request that Storm Group's certification be renewed at GAF's premier level of membership, "Master Elite® Roofing Contractor."

20.     In the period leading up to the expiration of Storm Group's second term, Lipinskiy had also begun making and posting YouTube videos about roofing products and included negative comments about GAF products in these videos, which violated Lipinskiy's obligations in the GAF Certified Contractor Program Participation Agreement.

21.     At the expiration of the second term of Storm Group's membership in GAF's Certified Roofing Contractor Program, GAF did not renew Storm Group's membership in the Program. GAF also did not upgrade Storm Group's status to Master Elite® Roofing Contractor.

22.     Storm Group and Lipinskiy then began an online campaign intended to cause harm to GAF.

23.     Beginning in the spring of 2016, Lipinskiy and Storm Group published no less than eight YouTube videos disparaging GAF.

24.     On July 21, 2016, Lipinskiy emailed GAF's local sales manager and said "I want to work with GAF," but "[i]f you want to be my enemy and be on other side it's your choice and I will respect it." Lipinskiy also threatened that "it will be very damaging to GAF down the road if we don't work together."

25.     In his July 21, 2016 e-mail, Lipinskiy also said "I have scripts written about future videos" and asked " Are you guys enjoying my content?". Lipinskiy

5

concluded with a threat that Lipinskiy would either work with GAF or spend the rest of his life working against GAF:

> Let me know where you guys are. We can make a story of me coming back to GAF if I believe you have something to offer me and consumers; or I can spent the rest of my life selling against you. I will wait for your reply before I make next video, because it's a harsh one if I proceed.

26.    Because of these actions by Lipinskiy and Storm Group, and after multiple attempts to resolve matters with them without litigation, GAF commenced an arbitration to enjoin Lipinskiy and Storm Group and recover damages from them on December 30, 2016.

27.    In the arbitration, GAF asserted claims for breach of the Certified Contractor Program Participation Agreement, as well as claims for business defamation, product libel/disparagement, violation of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") (Minnesota Stat. §§ 325d.44, et. seq.), Lanham Act violations (43(a), 15 U.S.C. §1125(a)), and tortious interference with prospective business relations/economic advantage.

28.    Lipinskiy and Storm Group were represented by counsel before and during all parts of the arbitration, including the negotiation of the settlement agreement that resolved the arbitration.

### September 19, 2017 Settlement Agreement and Release

29.    In August 2017, shortly before the arbitration trial was scheduled to begin and Lipinskiy was facing the risk of additional liability from the business

structure of Storm Group being pierced, Lipinskiy, Storm Group, and GAF negotiated a settlement agreement through their attorneys.

30.    On August 30, 2017, Lipinskiy and Storm Group provided a signed written term sheet to GAF outlining the terms to which Lipinskiy was agreeing.

31.    The parties subsequently negotiated the terms of a written settlement agreement and exchanged multiple drafts with proposed revisions to several terms before the agreement was finalized and signed by the parties.

32.    On September 19, 2017 GAF, Storm Group, and Lipinskiy entered into the final, written Settlement Agreement and Release that resolved the arbitration ("Settlement Agreement"). The Settlement Agreement is attached as Exhibit A.

33.    The Settlement Agreement requires that the terms be kept confidential, except as needed to enforce compliance with the Settlement Agreement:

> The parties and their respective counsel represent and agree that they will keep confidential the terms and contents of the Settlement Agreement and the facts, issues, and claims subject of the Arbitration, and that they will not hereinafter disclose the terms and contents of the Settlement Agreement, or any information concerning the facts, issues, and claims in the Arbitration to any third party except as required by law or as necessary to effectuate or enforce the terms of the Settlement Agreement. Where disclosure to third parties (i.e., attorneys, financial, or tax advisors, etc.) is required in order to effectuate the terms and conditions of the Settlement Agreement, such third parties shall be informed of and bound by this confidentiality clause. In no event shall any party make or cause to be made any comment, statement, or press release

concerning the facts, issues, and claims in the Arbitration, the fact of
this Settlement Agreement, or the substance of the terms of the
Settlement Agreement. . . .

Exhibit A, Paragraph 10 (Confidentiality).

34.     Storm Group and Lipinskiy were represented by counsel during the

negotiation of the Settlement Agreement, and Storm Group and Lipinskiy's

counsel negotiated the Settlement Agreement on their behalf.

35.     The Settlement Agreement prohibits Lipinskiy from publicly

disparaging GAF, whether directly or via another entity, like Roofing Insights,

(except for in connection with certain permitted product comparisons after five

years from September 19, 2017):

> Except as expressly set forth in Paragraphs 3(b) and 4 below,
> Lipinskiy agrees not to disparage GAF or its products or employees,
> whether directly or via or in conjunction with or on behalf of any
> other entity and/or individual (including but not limited to Roofing
> Insights LLC and Rainforest Marketing, LLC), in any public medium,
> including but not limited to: (i) conventional media such as
> newspapers, magazines, billboards, posters, brochures, flyers,
> television/radio advertisements, phone solicitations, and the like; or
> (ii) social media such as YouTube (including the "Roofing Insights"
> YouTube Channel, Facebook(including any private trade association
> and community pages on Facebook), Twitter, Instagram, SnapChat,
> Pinterest, FundRazr, or any other social media and internet websites
> that may now or in the future exist.

Exhibit A, Paragraph 3.a (Non-Disparagement of GAF by Lipinskiy).

36.     The Settlement Agreement also prohibits Lipinskiy from requesting

or prompting disparagement of GAF by third-parties:

> This prohibition shall not apply to public comments made by third-
> parties unrelated to Storm Group or Lipinskiy, who post comments,
> pictures, videos, or replies to otherwise nondisparaging statements,

8

> videos, picture, or other representations regarding GAF, so long as
> the third-parties are not acting at the prompting of, request of, on
> behalf of, at the direction of; or under the control of either Storm
> Group or Lipinskiy.

Exhibit A, Paragraph 3.a (Non-Disparagement of GAF by Lipinskiy).

37.    The Settlement Agreement also requires that Lipinskiy remove all

disparaging posts, comments, and statements within forty-eight hours of notice

from GAF: "Lipinskiy agrees to remove any disparaging statements, videos, posts,

press releases, pictures, or replies within his control within forty-eight (48) hours

of receipt of notice from GAF in accordance with the methods stated in Paragraph

8 herein." Exhibit A, Paragraph 3.a (Non-Disparagement of GAF by Lipinskiy).

38.    The Settlement Agreement permits comments about GAF products by

Lipinskiy only via certain permitted product comparisons after five years from the

date of the Settlement Agreement—i.e., after September 18, 2022:

> Notwithstanding the foregoing [prohibition of disparagement of GAF
> by Lipinskiy], after five (5) years from the date of full execution of
> this Settlement Agreement, Lipinskiy may make statements about
> GAF products only via product comparisons in accordance with
> Paragraph 4, whether directly or via or in conjunction with or on
> behalf of any other entity and/or individual, but Lipinskiy may not
> do so via or in conjunction with or on behalf of Storm Group. For the
> avoidance of doubt, except for product comparisons in accordance
> with the requirements of Paragraph 4 below, Lipinskiy is prohibited
> from making any disparaging statements about GAF or its products
> or employees, whether directly or indirectly, in accordance with
> Paragraph 3(a) above.

Exhibit A, Paragraph 3.b (Non-Disparagement of GAF by Lipinskiy).

39.    The Settlement Agreement further provides that any permitted

product comparisons after five years meet certain objective requirements:

CORE/2054533.0011/162599252.1

Any product comparisons permitted by Paragraph 3(b) above must be objective, must not be false or purposely misleading, must discuss GAF products in a journalistic, product comparison environment, and must not reference Storm Group or GAF's certified contractor program in any way. Further, GAF products must receive identical treatment as other products included in any such product comparisons. Lipinskiy also agrees to include a written disclaimer on any and all such product comparisons indicating that his statements reflect only his personal views and opinions and are not based on any recognized industry standards or accepted test methods.

Exhibit A, Paragraph 4 (Permitted Product Comparisons After Five Years).

40.     The Settlement Agreement prohibits Lipinskiy from reposting

previously identified disparaging postings:

Storm Group and Lipinskiy agree never to repost or republish any prior statements or videos that GAF has previously identified to Storm Group and Lipinskiy as disparaging GAF or as misusing GAF Marks (as that term is defined in the GAF Certified Contractor Program Participation Agreement), whether directly or via or in conjunction with or on behalf of any other entity and/or individual (including but not limited to Rainforest Marketing, LLC or Roofing Insights, LLC), in any public medium including but not limited to: (i) conventional media such as newspapers, magazines, billboards, posters, brochures, flyers, television/radio advertisements, phone solicitations, and the like; or (ii) social media such as YouTube (including the "Roofing Insights" YouTube Channel, Facebook (including any private trade association and community pages on Facebook), Twitter, Instagram, SnapChat, Pinterest, FundRazr, or any other social media and internet websites that may now or in the future exist.

Exhibit A, Paragraph 5 (Prohibited Posting or Publishing of Previously Identified

Statements and Videos).

41.     The Settlement Agreement prohibits Lipinskiy from referencing prior

GAF certification:

Neither Storm Group nor any of its officers, agents, and employees may reference Storm Group's prior GAF certification or certified contractor status, whether directly or via or in conjunction with or on behalf of any other entity and/or individual (including but not limited to Lipinskiy, Roofing Insights, LLC or Rainforest Marketing, LLC), in any public medium including but not limited to: (i) conventional media such as newspapers, magazines, billboards, posters, brochures, flyers, television/radio advertisements, phone solicitations, and the like; or (ii) social media such as YouTube (including the "Roofing Insights" YouTube Channel, Facebook (including any private trade association and community pages on Facebook), Twitter, Instagram, SnapChat, Pinterest, FundRazr, or any other social media and internet websites that may now or in the future exist.

Exhibit A, Paragraph 6 (No Reference to Prior GAF Certification).

42.     The Settlement Agreement provides for liquidated damages,

attorneys' fees, and costs for violations of the Settlement Agreement by Lipinskiy:

If any of the terms of the Settlement Agreement set forth in Paragraphs 2-6, 10, and 11 is violated by either Storm Group or Lipinskiy, Storm Group and Lipinskiy shall, jointly and severally, be responsible for reasonable attorneys' fees and costs incurred by GAF in identifying, raising, and resolving the violation of the Settlement Agreement, as well as liquidated damages in the amount of $10,000 for each posting or publication of a statement, video, or press release that is posted or published in violation of the Settlement Agreement in any public medium, including but not limited to: (i) conventional media such as newspapers, magazines, billboards, posters, brochures, flyers, television/radio advertisements, phone solicitations, and the like; or (ii) social media such as YouTube (including the "Roofing Insights" YouTube Channel, Facebook (including any private trade association and community pages on Facebook), Twitter, Instagram, SnapChat, Pinterest, FundRazr, including via posting on the Internet or social media. The maximum damages available to GAF, not including attorney's fees and costs, shall be $100,000 for each identical statement, video, or press release, regardless of how many times or places each statement, video, or press release is posted or published. The parties agree to this liquidated damages provision because the parties understand

and agree that reputational harm and damages would be difficult to quantify.

Exhibit A, Paragraph 7 (Attorneys' Fees and Costs and Liquidated Damages).

43.    The Settlement Agreement also provides that breaches of confidentiality are subject to liquidated damages: "Violation of this provision is subject to the liquidated damages clause set forth above in Paragraph 7." Exhibit A, Paragraph 10 (Confidentiality).

44.    The Settlement Agreement provides that GAF will provide written notification of violations to Lipinskiy's counsel and to Lipinskiy and that GAF reserves the right to seek liquidated damages for violations of the agreement, even if remedied within 48 hours:

> If GAF discovers any violation of the Settlement Agreement by Storm Group or Lipinskiy, GAF will provide written notice (i) via e-mail to James Smith at james.t.smith.law@gmail.com and to Lipinskiy at Dmitry@Stormgrouproofing.com, and (ii) via overnight mail to James Smith at 5101 Olson Memorial Highway, Suite 1000, Minneapolis, MN 55422. If Storm Group and/or Lipinskiy fail to remove any disparaging statements, representations, comments, posts, videos, photographs, recordings, or the like within forty-eight (48) hours of receipt of notice by GAF, GAF will seek further relief, including but not limited to injunctive relief and other remedies set forth in Paragraph 7. GAF reserves the right to seek the liquidated damages set forth above in Paragraph 7 for violations that Storm Group and/or Lipinskiy remedy within the 48-hour period.

Exhibit A, Paragraph 8 (Notification of Violations).

45.    The Settlement Agreement provides that the parties will not demean or disparage each other:

> The parties shall not, and shall not cause their respective officers, directors, shareholders, partners, members, trustees, parent companies, sister companies, affiliates, subsidiaries, employees, attorneys, accountants,

12

predecessors, successors, insurers, representatives, agents and assigns, to say anything about any other party that may be considered demeaning, disparaging, or detrimental to that other party, except for any statements in connection with product comparisons as permitted by Paragraphs 3(b) and 4.

Exhibit A, Paragraph 11 (Non-Disparagement).

### Lipinskiy's Violations of the Settlement Agreement and Lipinskiy's and Roofing Insights' Defamation of GAF

46.     Lipinskiy has breached the Settlement Agreement on multiple occasions, and Lipinskiy's breaches of the Settlement Agreement were wanton and willful.

47.     Lipinskiy and Roofing Insights have also defamed GAF through numerous false and derogatory statements online—both written and oral in videos—that are intended to harm GAF's reputation.

48.     As shown below, Lipinskiy's breaches of the Settlement Agreement and Lipinskiy's and Roofing Insights' disparagement and defamation of GAF have increased in severity and frequency as part of Lipinskiy's calculated smear campaign against GAF, including morphing from disparaging GAF products to disparaging individual GAF employees by name.

### Video Entitled "Roof Shingles: GAF Timberline HDZ VS OC Duration VS IKO Dynasty roofing pull test":

49.     On or about February 7, 2020, Lipinskiy made and posted a video entitled "Roof Shingles: GAF Timberline HDZ VS OC Duration VS IKO Dynasty roofing pull test" on YouTube (see Exhibit B).

13

50.     Based on a so-called "pull test," the video compares roofing products from three companies: GAF, Owens Corning, and IKO.

51.     Lipinskiy's video of a product comparison involving GAF products before the permitted time for such product comparisons in Paragraphs 3.b and 4 of the Settlement Agreement violates Paragraph 3.a of the Settlement Agreement.

52.     Among other statements about GAF products in the video, Lipinskiy says that GAF had the lowest score of the three companies on this "pull test," and Owens Corning and IKO are "better than any other brands" and that "those two are the best" with respect to the test.

53.     In addition to violating the prohibition on product comparisons for five years in the Settlement Agreement, this video also violates the requirements for permitted product comparisons in Paragraph 4 in the Settlement Agreement.

**GAF's March 2, 2020 Notification of Violations to Lipinskiy and His Counsel:**

54.     On March 2, 2020, GAF provided written notice of violations of the Settlement Agreement to Lipinskiy and his counsel in accordance with Paragraph 8 of the Settlement Agreement. This notice is attached as Exhibit C.

55.     GAF notified Lipinskiy that his disparaging postings violated Paragraph 3.a of the Settlement Agreement and demanded that Lipinskiy remove all disparaging posts, comments, and statements from YouTube, Facebook, and LinkedIn.

56.     GAF also notified Lipinskiy that his public statements about GAF violated Paragraph 10 of the Settlement Agreement, in addition to violating Paragraph 3.

57.     GAF also reminded Lipinskiy that the terms and contents of the Settlement Agreement—and the related facts and subject matter—are confidential and may not be disclosed pursuant to Paragraph 10, except as required by law or to enforce the Settlement Agreement.

58.     Finally, GAF notified Lipinskiy that each of the identified violations is subject to liquidated damages and attorneys' fees and costs incurred by GAF pursuant to Paragraphs 7 and 10 of the Settlement Agreement and that GAF intended to seek those fees and costs.

59.     Lipinskiy continued to be represented by counsel. On March 4, 2020, Lipinskiy's counsel responded to GAF's March 3, 2020 letter on Lipinskiy's behalf.

**Purported Quotation from GAF Employee:**

60.     On or about March 11, 2020, Roofing Insights posted a purported quotation from a GAF employee on Facebook that stated "We are not a shingle manufacturer we are a marketing company," implying that GAF does not care about manufacturing quality products and is only concerned with marketing.

**Revised Video Originally Entitled "Roof Shingles: GAF Timberline HDZ VS OC Duration VS IKO Dynasty roofing pull test":**

61.     After GAF's March 2, 2020 notification of violations of the Settlement Agreement to Lipinskiy and his counsel, the title and contents of the YouTube

15

video originally entitled "Roof Shingles: GAF Timberline HDZ VS OC Duration VS IKO Dynasty roofing pull test" was revised but still included footage prominently displaying a GAF sign with GAF's trademarked logo.

62.     This footage in the video improperly suggested to viewers that the third product included in the "pulltest" shown in the video is a GAF product. Thus, the revised video continued to violate Paragraph 3.a of the Settlement Agreement.

63.     In addition, this footage in the video constituted an improper use of GAF trademarks.

64.     Lipinskiy had a limited license to use GAF's trademarks when he was a participant in GAF's Certified Contractor Program Participation Agreement.

65.     Because Lipinskiy is no longer a participant in the program, he had no right to any use of GAF's marks.

**Screen Shot of Video Originally Entitled "Roof Shingles: GAF Timberline HDZ VS OC Duration VS IKO Dynasty roofing pull test" video:**

66.     Before Lipinskiy modified the title and contents of the video originally entitled "Roof Shingles: GAF Timberline HDZ VS OC Duration VS IKO Dynasty roofing pull test," a screenshot of the video with its original title was posted on IKO's Facebook page.

67.     On information and belief, Lipinskiy directly or indirectly caused this screen shot to be posted on IKO's Facebook page.

68.     Lipinskiy is directly responsible for the damages to GAF that have been caused by the disparaging video, which was still on IKO's Facebook page on March 11, 2020.

**GAF's March 11, 2020 Notification of Violations to Lipinskiy and His Counsel:**

69.     On March 11, 2020, GAF provided written notice of violations of the Settlement Agreement to Lipinskiy and his counsel in accordance with Paragraph 8 of the Settlement Agreement. This notice is attached as Exhibit D.

70.     GAF notified Lipinskiy that his disparaging postings violated Paragraph 3.a of the Settlement Agreement and demanded that Lipinskiy remove all disparaging posts, comments, and statements from YouTube, Facebook, LinkedIn, Instagram, Twitter, and any other places.

71.     GAF also notified Lipinskiy that his public statements about GAF violated Paragraph 10, in addition to violating Paragraph 3.

72.     GAF also reminded Lipinskiy that the terms and contents of the Settlement Agreement—and the related facts and subject matter—are confidential and may not be disclosed pursuant to Paragraph 10, except as required by law or to enforce the Settlement Agreement.

73.     Finally, GAF notified Lipinskiy that each of the identified violations is subject to liquidated damages and attorneys' fees and costs incurred by GAF pursuant to Paragraphs 7 and 10 of the Settlement Agreement and that GAF intends to seek these fees and costs.

74.     Lipinskiy continued to be represented by counsel. On March 12, 2020, Lipinskiy's counsel responded to GAF's March 11, 2020 letter on Lipinskiy's behalf.

**July 2020 Postings About GAF and Settlement Agreement:**

75.     On or about July 14, 2020, Lipinskiy posted the following statement on Roofing Insights' Facebook page: "If we get 100 comments or we get one more cease and desist letter we will publish the full story about GAF – Roofing. Comment below if you want to hear."

76.     On or about July 17, 2020, Lipinskiy posted the following statement on Roofing Insights' Facebook page:

> About 1000 comments post. Unfortunately I can't commit to engage with you: I can get $10,000 fine for each comment I make. So, you will have to get to 1000 comments without my engagement folks. Find the post and comment away. Not making $100,000 video if I don't get 1000 people interested.

77.     A few months later, Lipinskiy made good on his threat to "publish the full story about GAF."

**Video entitled "GAF Roofing: The Biggest Bully In Industry":**

78.     On or about October 9, 2020, Lipinskiy posted a 47-minute video entitled "GAF Roofing: The Biggest Bully In Industry" on Facebook (both Roofing Insights and Dmitry Lipinskiy), YouTube, Instagram, LinkedIn, and Roofinginsights.com (see Exhibit B).

79.     Among other things, Lipinskiy disparages GAF and its products numerous times throughout the video, stating, for example, that GAF is a "bully,"

is "run like a mafia," is "afraid of cameras," and has "shitty" manufacturing facilities.

80.     Lipinskiy additionally disparages GAF employees, for example, referring to a GAF employee as "a liar."

81.     In the video, Lipinskiy also frequently references Storm Group's prior GAF certification, the prior arbitration with GAF, and the existence and terms of the confidential Settlement Agreement.

82.     These statements violate a number of provisions of the Settlement Agreement, including Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy), 6 (No Reference to Prior GAF Certification), 10 (Confidentiality), and 11 (Non-Disparagement).

83.     Lipinskiy's numerous violations of the Settlement Agreement are willful; indeed, Lipinskiy states that he has consulted with his lawyer and that this video will probably cost him a lot of money on the order of "$100,000 plus."

**Postings on the Roofing Insights Website:**

84.     Along with the video entitled "GAF Roofing: The Biggest Bully In Industry," several statements were posted on Roofing Insights' website related to the video that disparage GAF and violate confidentiality in violation of the Settlement Agreement.

85.     For example, the Roofing Insights' website falsely attributes the statement that "I know our products are not the best," to a GAF vice-president in violation of Paragraph 3.a. of the Settlement Agreement. The Roofing Insights'

website also included the following statements that breach Paragraphs 6 and 10 of the Settlement Agreement:

- "CEO Dmitry Lipinskiy finally revealed the story behind his conflict with major shingle manufacturer GAF."

- " PEOPLE NEED TO HEAR THIS MESSAGE, Lipinskiy said, then revealing that back in 2014, he was actually a GAF-certified installer, something his contingent of subscribers were shocked to hear."

- "Lipinskiy agreed to pay the company $15,000 for a settlement fee,"

- "Included in that agreement was a clause stating that Lipinskiy also wouldn't review future GAF products."

86.     Lipinskiy's statements on the Roofing Insights' website also demonstrate that his violations of the Settlement Agreement are both wanton and willful. These statements include that Lipinskiy's disclosure of his conflict with GAF "will almost certainly result in another lawsuit."

**Meme Describing GAF as the North Korea of Shingle Manufacturers:**

87.     On or about Sunday, October, 11, 2020, a disparaging meme was posted on Facebook (both on the pages of Roofing Insights and Dmitry Lipinskiy), Instagram, LinkedIn, and Roofinginsights.com (see Exhibit B).

88.     This meme describes GAF as the North Korea of shingle manufacturers.

89.     These postings violate Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy) and 11 (Non-Disparagement) of the Settlement Agreement.

20

**Video entitled "GAF Glenwood: Worst Roofing shingle in History!!! (Will be DELETED) DOWNLOAD | Roofing Insights":**

90.     On or about October 11, 2020, Lipinskiy reposted several videos containing disparaging statements about GAF that he had previously removed.

91.     The video compilation of previously-removed videos was posted on Facebook (both Roofing Insights and Dmitry Lipinskiy), YouTube, Instagram, LinkedIn, Twitter, and Roofinginsights.com (see Exhibit B).

92.     This video compilation begins with the written statement that "The following videos were published by GAF Certified Contractor Storm Group Roofing on November 24, 2016 but were later removed per GAF lawyers demand. Storm Group paid $15,000 and agreed to not review GAF products for 5 years. GAF kept sending legal letters every year."

93.     In addition to breaching Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy), 10 (Confidentiality), and 11 (Non-Disparagement) of the Settlement Agreement, the reposting of each individual previous video also violates the Settlement Agreement's prohibition on posting or publishing previously identified statements and videos. See Settlement Agreement, ¶ 5 (Prohibited Posting or Publishing or Previously Identified Statements and Videos).

**Video entitled "GAF leadership failure. What would Elon Musk do? Leadership crisis in roofing industry.":**

94.     On or about October 12, 2020, Lipinskiy posted a Facebook live video that he captioned as "GAF leadership failure. What would Elon Musk do? Leadership crisis in roofing industry."

21

95.     This video was posted on Facebook, YouTube, and Roofinginsights.com (see Exhibit B).

96.     In this video, Lipinskiy disparages GAF products and says, for example, they are the "worst product I have ever seen in my life" and that GAF "product is shit."

97.     In this video, Lipinskiy also disparages GAF employees and says, for example, that GAF engineers are "retarded engineers."

98.     This video violates a number of provisions of the Settlement Agreement, including Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy), 10 (Confidentiality), and 11 (Non-Disparagement).

99.     Like the statements on the Roofing Insights website, this video demonstrates Lipinskiy's willful violation of the Settlement Agreement. For example, Lipinskiy says he knows GAF is going to make a move and that, as soon as he receives a "cease-and-desist letter" from GAF, Lipinskiy's followers will be the first to know.

**Video entitled "GAF: We don't know when to quit | Roofing insights.":**

100.    On October 12, 2020, the Roofing Insights YouTube account also posted a video entitled "GAF: We don't know when to quit | Roofing insights."

101.    This video was posted on Facebook (both Roofing Insights' and Lipinskiy's pages), YouTube, Instagram, LinkedIn, Twitter, and Roofinginsights.com (see Exhibit B).

22

102.    This video disparages GAF by copying a clip from a popular animated movie and placing the GAF trademark on the bully character who is laughing after having committed an assault. This video violates a number of provisions of the Settlement Agreement, including Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy) and 11 (Non-Disparagement). This video also constitutes a misuse of GAF's trademark.

103.    This video also demonstrates Lipinskiy's violation of the Settlement Agreement is willful—the caption reads "One thing about roofing insights: we don't know when to quit! So bring it on GAF – Roofing."

**Video entitled "5 demands to GAF corporation: from roofing insights community":**

104.    On or about October 13, 2020, this video was posted on Facebook, Instagram, YouTube, LinkedIn, and Roofinginsights.com (see Exhibit B).

105.    In this video, Lipinskiy makes several disparaging statements about GAF and GAF employees.

106.    These statements include saying that "You have to admit you have a major problem with the Minneapolis plant," stating that the Minneapolis plant "is like third-world country plant," referring to GAF as North Korea, claiming GAF's warranty is a homeowner scam and marketing gimmick, and telling GAF's CEO, James (Jim) Schnepper, to "be a man."

107.    This video violates a number of provisions of the Settlement

Agreement, including Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy)

and 11 (Non-Disparagement).

**Post with purported quote from a GAF employee that "We're not a shingle manufacturer, we are a marketing company.":**

108.    On or about October 13, 2020, this purported quotation was posted

on Facebook and LinkedIn (see Exhibit B).

109.    In this post, Lipinskiy makes disparaging statements about GAF and

GAF employees, including again the statement that GAF representatives have

purportedly suggested that GAF does not care about manufacturing quality

products and is only a marketing company.

110.    This video violates a number of provisions of the Settlement

Agreement, including Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy)

and 11 (Non-Disparagement).

**GAF's October 13, 2020 Notification of Violations to Lipinskiy and His Counsel:**

111.    On October 13, 2020, GAF provided written notice of violations of the

Settlement Agreement to Lipinskiy and his counsel in accordance with Paragraph

8 of the Settlement Agreement. This notice is attached as Exhibit E.

112.    GAF notified Lipinskiy that his disparaging postings violated

Paragraph 3.a of the Settlement Agreement and demanded that Lipinskiy remove

all disparaging posts, comments, and statements from YouTube, Facebook,

LinkedIn, Instagram, Twitter, and any other places.

24

113.    GAF also notified Lipinskiy that his public statements about GAF violate Paragraph 10, in addition to violating Paragraph 3.

114.    GAF also reminded Lipinskiy that the terms and contents of the Settlement Agreement—and the related facts and subject matter—are confidential and may not be disclosed pursuant to Paragraph 10, except as required by law or to enforce the Settlement Agreement.

115.    Finally, GAF notified Lipinskiy that each of the violations identified in the written notice is subject to liquidated damages and attorneys' fees and costs incurred by GAF pursuant to Paragraphs 7 and 10 of the Settlement Agreement and that GAF intends to seek these fees and costs.

116.    Lipinskiy continued to be represented by counsel. On October 14, 2020, Counsel for Lipinskiy sent a responsive letter to GAF on behalf of Lipinskiy.

**Lipinskiy's and Roofing Insights' Additional Actions After GAF's October 13, 2020 Written Notification of Violations:**

117.    Despite GAF's October 13, 2020 notice, Lipinskiy was not deterred and continued to make disparaging posts and videos about GAF online, including the following exemplary but not exhaustive examples.

118.    On October 13, 2020, Lipinskiy posted a video entitled " Served!!! Why are we talking about shingles with lawyers?" on Roofing Insights' Facebook page.

119.    This posting violates a number of provisions of the Settlement Agreement, including Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy), 10 (Confidentiality), and 11 (Non-Disparagement).

120.    Lipinskiy also posted most of GAF's October 13, 2020 notice letter but omitted the first page of the letter referencing Lipinskiy's failure to abide by his contractual obligations with GAF.

121.    This posting violates Paragraph 10 (Confidentiality) of the Settlement Agreement.

122.    On October 14, 2020, Lipinskiy posted "Great American Failure. That's what it stands for." on Roofing Insights' Facebook page.

123.    This posting violates Paragraph 3 (Non-Disparagement of GAF by Lipinskiy) and Paragraph 11 (Non-Disparagement) of the Settlement Agreement.

124.    On October 16, 2020, Lipinskiy posted a video reviewing GAF Timberline shingles entitled "GAF Timberline HDZ review | 2020 Roofing Shingles Guide | Roofing Insights" on Roofing Insights' Facebook, YouTube, and Instagram accounts, as well as on Lipinskiy's LinkedIn account and on roofinginsights.com (see Exhibit B).

125.    These postings violate Paragraph 3 (Non-Disparagement of GAF by Lipinskiy) and Paragraph 11 (Non-Disparagement) of the Settlement Agreement.

126.    On October 16, 2020, Lipinskiy posted an "Updated 2020 shingle guide" with a scoring chart reflecting a score for GAF Timberline shingles to the

CORE/2054533.0011/162599252.1

Roofing Insights' Facebook and Instagram accounts, Lipinksiy's LinkedIn account, and roofinginsights.com (see Exhibit B).

127.   These postings violate Paragraph 3 (Non-Disparagement of GAF by Lipinskiy) and Paragraph 11 (Non-Disparagement) of the Settlement Agreement.

128.   On October 17, 2020, Lipinskiy posted a meme comparing GAF to former NBA player Dennis Rodman and incorporating the GAF trademark. The post was shared on Roofing Insights' Facebook, Instagram, and Twitter accounts, Lipinskiy's Facebook and LinkedIn accounts, and roofinginsights.com (see Exhibit B).

129.   These postings violate Paragraph 3 (Non-Disparagement of GAF by Lipinskiy) and Paragraph 11 (Non-Disparagement) of the Settlement Agreement. This posting also constitutes a misuse use of GAF's trademark.

### Lipinskiy's and Roofing Insights' Commercial/Product Disparagement and Deceptive Trade Practices

130.   Lipinskiy's and Roofing Insights' prior false statements regarding GAF products are of the type that tend to disparage GAF products.

131.   For example, the following false statements by Lipinskiy in Roofing Insights' October 12, 2020 video entitled "GAF leadership failure. What would Elon Musk do? Leadership crisis in roofing industry" disparage GAF products:

- GAF "product is shit"

- GAF is afraid of publicity because "you [GAF president Jim Schnepper] know how shitty your products are"

27

- GAF representatives told Lipinskiy they do not like GAF products

- GAF Glenwood shingles must be discontinued due to poor quality.

132.   Similarly, Roofing Insights' publication of a video falsely entitled "GAF Glenwood: Worst Roofing shingle in History!!! (Will be DELETED) DOWNLOAD | Roofing Insights" disparages GAF products.

133.   Lipinskiy's and Roofing Insights' false statements disparaging GAF products have caused GAF to suffer monetary loss as a result of the disparagement, as evidenced by numerous responses to the disparaging posts committing to purchasing fewer or no GAF products in the future, including the following examples:

- "Wow I literally just met with GAF the other day and was certified. I was about to start installing this shingle. Thank God I watched this video."

- "I want to make sure that I pick the right and worth the money shingles. . . . I almost pick GAF because of that golden pledge, but got lucky because it's raining and delays caused by the pandemic…great stuff ..now I know I will not get GAF."

- "I am a home-owner in the North Texas area doing research, looking to get a new 48 square asphalt-shingle roof installed. The one thing I am sure of at the moment is that I will NEVER buy anything GAF, no matter how good they might be."

28

### Lipinskiy's and Roofing Insights' Tortious Interference with Prospective Economic Advantage

134.   GAF has over 80 years of experience as a prominent manufacturer of shingles and is currently North America's largest roofing manufacturer. As a result, GAF holds a reasonable expectation that it will continue to make significant sales of roofing products in the Twin Cities metro area and throughout the United States.

135.   As the owner of a roofing business, a past GAF certified installer, and a self-described "voice for the roofing community," Lipinskiy was and is aware of GAF's expectation of significant future roofing sales.

136.   As the principal of Roofing Insights, Lipinskiy's knowledge of GAF's expectations is also attributable to Roofing Insights.

137.   Lipinskiy's and Roofing Insights' defamatory statements about GAF and their disparaging statements regarding GAF products have resulted in lost sales to GAF, as evidenced by numerous responses to the defamatory and disparaging posts committing to purchasing fewer or no GAF products in the future. *See* examples at ¶ ___, *supra*.

138.   On information and belief, Lipinskiy and Roofing Insights are additionally interfering with GAF certified contractors when those contractors disagree with Lipinskiy's and Roofing Insights' defamatory and disparaging statements about GAF.

139.   GAF would have secured additional product sales in the absence of Lipinskiy's and Roofing Insights' defamatory statements regarding GAF and their

CORE/2054533.0011/162599252.1

disparaging statements regarding GAF products or their interference with GAF certified contractors.

## Count I – Breach of Contract by Lipinskiy

140.    GAF repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

141.    The Settlement Agreement is a valid and enforceable contract.

142.    Lipinskiy has breached multiple prohibitions and obligations in the Settlement Agreement, including Paragraphs 3 (Non-Disparagement of GAF by Lipinskiy), 5 (Prohibited Posting or Publishing of Previously Identified Statements and Videos), 6 (No Reference to Prior GAF Certification), 10 (Confidentiality), and 11 (Non-Disparagement).

143.    Lipinskiy is liable for liquidated damages in the amount of $10,000 for each disparaging posting and reposting in each place in accordance with Paragraphs 3, 5, and 7 of the Settlement Agreement.

144.    Lipinskiy is also liable for liquidated damages in the amount of $10,000 for each posting of confidential information in each place in accordance with Paragraphs 7 and 10 of the Settlement Agreement.

145.    Lipinskiy's breaches of the Settlement Agreement identified in this complaint amount to more than $300,000 in liquidated damages.

146.    GAF has been damaged by Lipinskiy's breaches of the Settlement Agreement, including with respect to GAF's reputation and goodwill.

CORE/2054533.0011/162599252.1

147.    GAF has performed its limited obligations in the Settlement Agreement.

### Count II – Defamation by Lipinskiy and Roofing Insights

148.    GAF repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

149.    Lipinskiy's and Roofing Insights' false statements regarding GAF are of the type that tend to directly affect the property, business, and operation of GAF.

150.    For example, Roofing Insights' March 11, 2020, Facebook statement falsely attributing the quote "We are not a shingle manufacturer we are a marketing company," to a GAF employee gives the false impression to the public that GAF not only does not have shingle manufacturing expertise but that GAF itself recognizes a lack of shingle manufacturing expertise.

151.    By way of further example, Lipinskiy's false comments in Roofing Insights' October 9, 2020 video that GAF is a "bully," is "run like a mafia," is "afraid of cameras," and has "shitty" manufacturing facilities are prejudicial to each of GAF's property, business, and operations.

152.    Lipinskiy's false statement in Roofing Insights' October 12, 2020, video entitled "GAF leadership failure. What would Elon Musk do? Leadership crisis in roofing industry" that GAF employs "retarded engineers" is similarly prejudicial to GAF's business and operations.

153.    Roofing Insights' post comparing GAF to North Korea is yet another example of Lipinskiy's and Roofing Insights' willful defamation.

154.    Lipinskiy's and Roofing Insights' defamatory statements have caused GAF to incur damages in an amount to be proven at trial.

## Count III – Commercial/Product Disparagement by Lipinskiy and Roofing Insights

155.    GAF repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

156.    In the course of their business operations, Lipinskiy and Roofing Insights have made numerous false or misleading representations of fact that disparage GAF products.

157.    Lipinskiy's and Roofing Insights' disparaging statements have caused GAF to incur special damages in the form of monetary loss linked to the disparagement in an amount to be proven at trial.

## Count IV – Deceptive Trade Practices Under Minnesota Statutes Section 325D.44 by Lipinskiy and Roofing Insights

158.    GAF repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

159.    In the course of their business operations, Lipinskiy and Roofing Insights have made numerous false or misleading representations of fact that disparage GAF products.

160.    Lipinskiy's and Roofing Insights' disparaging statements entitle GAF to injunctive relief pursuant to Minn. Stat. § 325D.44, subd. 1(8).

32

## Count V – Tortious Interference with Prospective Economic Advantage by Lipinskiy and Roofing Insights

161.   GAF repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

162.   GAF has a reasonable expectation of economic advantage in the form of future roofing sales throughout North America, including the Twin Cities metro area.

163.   Lipinskiy and Roofing Insights both have knowledge of GAF's expectation of economic advantage.

164.   Lipinskiy's and Roofing Insights' illegal defamation of GAF and disparagement of GAF products have diminished GAF's expectation of economic advantage by reducing GAF's sales.

165.   It is likely that, in the absence of Lipinskiy's and Roofing Insights' defamation and disparagement, GAF would have realized its expected economic advantage in the form of higher sales of roofing products.

166.   Lipinskiy's and Roofing Insights' tortious interference with GAF's prospective economic advantage has damaged GAF in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, GAF requests judgment in its favor and relief as follows:

A.    An entry of judgment against Defendants;

CORE/2054533.0011/162599252.1

B.      A preliminary and permanent injunction against Defendants enjoining them from publicly disparaging or commenting on GAF, GAF products, and/or GAF employees and from using any GAF trademarks.

C.      An award to GAF of past damages, including liquidated damages for breach of the Settlement Agreement and actual damages for Defendants' tortious acts.

D.      An award to GAF of punitive damages, in accordance with Minnesota Statutes § 549.20, because Defendants' acts have shown deliberate disregard for the rights of others.

E.      Such further and other relief as the Court may deem proper and just.

Dated:  October 19, 2020                Respectfully submitted,

**STINSON LLP**

By:   /s/ Katherine A. Moerke
      Katherine A. Moerke (#0312277)
      Jon Woodruff (#0399453)
      50 South Sixth Street, Suite 2600
      Minneapolis, MN  55402
      Telephone:  612-335-1500
      Facsimile:  612-335-1657
      Email:  katherine.moerke@stinson.com
              jon.woodruff@stinson.com

      **ATTORNEYS FOR PLAINTIFF**
      **GAF MATERIALS LLC**