UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

GAF MATERIALS LLC,                          Case No. 20-CV-2194 (PJS/TNL)

                    Plaintiff,

v.                                                    ORDER

DMITRY LIPINSKIY and ROOFING
INSIGHTS, LLC,

                    Defendants.

Katherine A. Moerke, Adine S. Momoh, and Jon M. Woodruff, STINSON
LLP, for plaintiff.

James T. Smith, HUFFMAN, USEM, CRAWFORD & GREENBERG, PA,
for defendants.

Defendant Dmitry Lipinskiy is a roofer who used to be a member of the Certified

Roofing Contractor Program operated by plaintiff GAF Materials LLC ("GAF").  After

GAF declined to renew Lipinskiy's membership in 2016, Lipinskiy began to criticize

GAF through various social-media outlets.  GAF initiated a legal action against

Lipinskiy, alleging that he had violated the non-disparagement clause in his contract

with GAF.

That legal action settled in September 2017.  As part of the settlement, Lipinskiy

agreed "not to disparage GAF or its products or employees," Woodruff Decl. Ex. B,

¶ 3(a), and not to say anything about GAF "that may be considered demeaning,

disparaging, or detrimental to [GAF]," *id.* ¶ 11.  Lipinskiy made these promises even

though he runs a media company (defendant Roofing Insights, LLC) that produces content for roofing contractors, including evaluations of shingles and other roofing materials.

Lipinskiy more or less honored his promise not to disparage GAF until October 2020, when two prominent members of the roofing industry accepted an invitation to be interviewed by Lipinskiy but then abruptly changed their minds.  Lipinskiy got angry at GAF, suspecting that the company was behind the volte-face.  In retaliation, Lipinskiy launched a social-media blitz against GAF, beginning with a video entitled "GAF Roofing: The Biggest Bully in [the] Industry."  ECF No. 8 at 16.  In a number of subsequent social-media posts, Lipinskiy attacked GAF, its employees, and its products.

GAF filed this action against Lipinskiy and Roofing Insights, seeking injunctive relief and damages for breach of the settlement agreement, defamation, product disparagement, deceptive trade practices, and tortious interference with prospective economic advantage.  This matter is before the Court on GAF's motion for a preliminary injunction.  ECF No. 6.  For the reasons that follow, the Court grants GAF's motion.

I.  BACKGROUND

GAF is the largest manufacturer of roofing products in North America.  In addition to manufacturing roofing materials, GAF offers various certifications for

roofing contractors.  Compl. ¶¶ 9, 17.  Lipinskiy obtained one of these certifications

when his roofing company, Storm Group Roofing, LLC ("Storm Group"), entered into a

year-long Certified Contractor Program Participation Agreement ("the certification

agreement") with GAF in May 2014.  Compl. ¶¶ 17–18; Woodruff Decl. Ex F.  That

certification agreement contained a non-disparagement clause, and that clause explicitly

survived the termination of the contract.  Smith Aff. Ex. A, at 7.

GAF renewed Lipinskiy's membership in 2015 but, after Lipinskiy posted videos

that were critical of GAF products on his YouTube channel, GAF declined to renew

Lipinskiy's membership in 2016.  GAF also declined Lipinskiy's request that his status

be upgraded to Master Elite Roofing Contractor.  Compl. ¶¶ 18–21.  Lipinskiy

continued to post videos about GAF to YouTube.  GAF deemed those videos to be

disparaging and accused Lipinskiy of breaching the non-disparagement clause in the

certification agreement.  Woodruff Decl. Ex F.

On December 30, 2016, GAF initiated arbitration proceedings against Lipinskiy

and Storm Group.  Compl. ¶¶ 26–27.  The parties settled their dispute in an agreement

dated September 19, 2017.  Woodruff Decl. Ex. B.  The settlement agreement includes

three non-disparagement provisions, two of which are relevant to this action:[1]  First,

¶ 3(a) provides that "Lipinskiy agrees not to disparage GAF or its products or

---

[1]Paragraph 2 applies to Storm Group, which is not a party to the present dispute.
Woodruff Decl. Ex. B, ¶ 2.

employees . . . in any public medium . . . ."  Woodruff Decl. Ex. B, ¶ 3(a).  Second, ¶ 11—which applies to GAF, as well as to Lipinskiy—provides that the "parties shall not . . . say anything about any other party that may be considered demeaning, disparaging, or detrimental to that other party . . . ."  Woodruff Decl. Ex. B, ¶ 11.

Beginning in February 2020, Lipinskiy posted a series of videos and messages about GAF on the social-media pages of Roofing Insights.  Woodruff Decl. Ex. C.  Roofing Insights aims to be "a voice for the roofing community[.]"  Smith Aff. Ex. A, at 16.  The company operates several popular social-media pages, with more than 33,000 YouTube subscribers and thousands of followers on Facebook, Instagram, and LinkedIn.  The company also runs an online school for roofers.  Smith Aff. Ex. A, at 16, 21.

Lipinskiy ramped up his attacks on GAF in October 2020, after Lipinskiy suspected that GAF had induced two prominent individuals in the roofing industry to refuse to be interviewed by him.  (The details of this incident are described below.)  On multiple occasions, GAF notified Lipinskiy that Roofing Insights' social-media posts violated the settlement agreement's non-disparagement clauses and asked Lipinskiy to take them down.  *See* Woodruff Decl. Exs. D, E, F.  In response, Lipinskiy removed only some of the posts and continued to post new disparaging content about GAF.  *See*

Lipinskiy Aff. ¶ 4; Woodruff Decl. Exs. D, E, F.  On October 19, 2020, GAF filed this

action, and shortly thereafter GAF moved for a preliminary injunction.

## II.  ANALYSIS

### A.  Standard of Review

A court considers four factors in reviewing a motion for a preliminary injunction:

(1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to

the movant if the injunction is not granted; (3) the balance between that harm and the

harm that granting the injunction will inflict on the other parties; and (4) the public

interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "[T]he burden of establishing

the propriety of an injunction is on the movant."  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844

(8th Cir. 2003) (internal citation omitted).

### B.  Likelihood of Success

For the purpose of its motion for a preliminary injunction, GAF relies solely on

its claim that Lipinskiy breached the non-disparagement clauses of the settlement

agreement.  Pl.'s Mem. Supp. Prelim. Inj. 38 n.1.  The parties agree that Delaware law

governs the enforcement of the settlement agreement.  Woodruff Decl. Ex. B, ¶ 22.

Under Delaware law, a breach-of-contract claim consists of three elements:  (1) the

existence of the contract; (2) breach of a contractual obligation; and (3) damage to the

non-breaching party. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del.

2003).

The first and third elements of GAF's breach-of-contract claim are not in dispute.

The settlement agreement exists, and Lipinskiy's social-media posts have undoubtedly

harmed GAF. *See* Compl. ¶ 133 (listing comments from consumers who decided not to

buy GAF products due to Lipinskiy's posts). Only the second element—breach—is in

real dispute.

Lipinskiy argues that he did not breach the settlement agreement because he did

not disparage GAF. In the alternative, Lipinskiy argues that even if he did breach the

settlement agreement, GAF breached the agreement first by disparaging Lipinskiy, and

GAF's earlier breach excused Lipinskiy's later breach. The Court considers each of

these arguments in turn.

### 1. Did Lipinskiy Breach?

Lipinskiy's first argument—that he did not disparage GAF and therefore did not

breach the settlement agreement—is plainly meritless.

Because the settlement agreement does not define the term "disparage," the

Court looks "to the ordinary and usual meaning of the word." *Virtual Bus. Enters., LLC*

*v. Md. Cas. Co.*, No. 07C-12-070 MMJ, 2010 WL 1427409, at *6 (Del. Super. Ct. Apr. 9,

2010) (considering definition of "disparage" when contract did not define it).

Definitions of "disparage" tend to emphasize the critical, disrespectful nature of

disparaging statements.  For example, Black's Law Dictionary defines "disparage" as,

first, "[t]o speak slightingly of; to criticize (someone or something) in a way showing

that one considers the subject of discussion neither good nor important[,]" and second,

"[t]o degrade in estimation by disrespectful or sneering treatment."  *Disparage*, Black's

Law Dictionary (11th ed. 2019); *see also Disparage*, The American Heritage Dictionary of

the English Language (5th ed. 2011) ("1. To speak of in a slighting or disrespectful way.

2. To reduce in esteem or rank.").  Similarly, the Oxford English Dictionary defines

"disparage" as "[t]o bring discredit or reproach upon; to dishonour, discredit; to lower

in credit or esteem."  *Disparage*, Oxford English Dictionary (3d ed. 2015).[2]

Lipinskiy posted several videos and messages about GAF that are clearly

disparaging.[3]  To cite just a small sampling:  Lipinskiy uploaded videos entitled "GAF

Roofing: The Biggest Bully In Industry[,]" "GAF leadership failure.  What would Elon

---

[2]*Virtual Business Enterprises* considered several definitions of "disparage" and "disparagement."  Those definitions also emphasized speaking slightingly, lowering in reputation, and making derogatory comparisons. *Virtual Bus. Enters.*, 2010 WL 1427409, at *6.

[3]At the hearing, Lipinskiy disputed GAF's characterization of certain videos and posts as disparaging.  The Court agrees that not all of the videos and posts cited by GAF are disparaging.  Without question, though, some of those videos and posts are disparaging, and thus Lipinskiy clearly breached the settlement agreement.

Musk do?  Leadership crisis in roofing industry[,]" and "GAF Glenwood: Worst

Roofing shingle in History!!! (Will be DELETED) DOWNLOAD | Roofing Insights[.]"

Woodruff Decl. Ex. C.  Lipinskiy also posted memes comparing GAF to North Korea

and to Dennis Rodman, comparisons that were obviously not meant to be flattering.

Woodruff Decl. Ex. F; Pl.'s Mem. Supp. Prelim. Inj. 18, 29–30.  And in one Facebook

post, Lipinskiy wrote that GAF stands for "Great American Failure."  Woodruff Decl.

Ex. C.  Even a cursory review of the record reveals a plethora of posts speaking

slightingly of GAF, criticizing GAF, and degrading GAF's reputation.

　　　　Lipinskiy argues that statements must be false in order to be disparaging under

Delaware law and claims that his videos and other posts, while critical of GAF, were

not *falsely* critical.  In claiming that Delaware requires falsity, Lipinskiy relies on a single

sentence in a single order entered by a single trial judge in the case of *Orthopaedic*

*Associates of Southern Delaware v. Pfaff*, No. S17C-07-016 ESB, 2017 WL 6570028, at *8

(Del. Super. Ct. Dec. 22, 2017):  "Black's Law Dictionary defines disparagement as a

'false and injurious statement that discredits or detracts from the reputation of another's

character, property, product, or business.'"  The judge did not explain why he chose

that particular definition, which is the third of several definitions of "disparagement" in

Black's Law Dictionary.  More importantly, the judge did not assert that this definition

was compelled by Delaware law.  *Id.*  And finally, in deciding whether various of the

defendant's statements were disparaging, the judge did not even analyze whether the statements were false. *Id.* The Court therefore does not agree with Lipinskiy that a statement must be false in order to be deemed disparaging under Delaware law. *See Virtual Bus. Enters.*, 2010 WL 1427409, at *6 (providing five definitions of "disparage," four of which did not require falsity).

Even if the Court is incorrect—that is, even if Delaware does require falsity—the settlement agreement bars Lipinskiy not only from disparaging GAF, but also from making statements that "may be considered demeaning . . . or detrimental" to GAF. Woodruff Decl. Ex. B, ¶ 11. Certainly a statement can be "demeaning" or "detrimental" without being false. *See Demeaning*, Black's Law Dictionary (11th ed. 2019) ("Exhibiting less respect for a person or a group of people than they deserve, or causing them to feel embarrassed, ashamed, or scorned."); *Detrimental*, Black's Law Dictionary (11th ed. 2019) ("Causing harm, damage or loss; injurious or hurtful[.]"). And as the examples cited above illustrate, Lipinskiy has made a range of statements that are unquestionably "demeaning" or "detrimental" to GAF.

Almost certainly, then, GAF will succeed in proving that Lipinskiy breached the settlement agreement.

2.  Is Lipinskiy's Breach Excused?

Lipinskiy next argues that his breach of the settlement agreement is excused, because GAF breached the agreement by making disparaging remarks about him before he breached the agreement by making disparaging remarks about GAF.  Lipinskiy is correct that, under Delaware law, a "[s]ubstantial failure to live up to the material terms of a valid contract nullifies that contract."  *DeMarie v. Neff*, No. Civ.A.2077-S, 2005 WL 89403, at *4 (Del. Ch. Jan. 12, 2005).  Not all breaches suffice, though.  Delaware courts distinguish between a *material* breach, which "excuses performance of a contract," and a *non-material* breach, which "will not allow the non-breaching party to avoid its obligations under the contract."  *Id.*; *see also C & J Energy Servs., Inc. v. City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr.*, 107 A.3d 1049, 1073 n.119 (Del. 2014).  To determine if a breach is material, Delaware courts undertake a fact-intensive inquiry guided by the five factors described in § 241 of the Restatement (Second) of Contracts.  *See, e.g.*, *BioLife Sols., Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003).

Lipinskiy argues that GAF materially breached the contract when it induced two industry figures (Greg and Jill Bloom) to cancel an interview with Lipinskiy and when GAF made disparaging comments about Lipinskiy to another roofer (Steve Snyder). The Court will examine each alleged breach in turn.

*a.  Interview with the Blooms*

In the fall of 2020, Roofing Insights' marketing firm invited Greg and Jill Bloom to participate in an interview with Lipinskiy for Roofing Insights' social-media pages. Calzadilla Aff. ¶ 3.  Greg Bloom is an executive for a large roofing-supply company, and Jill Bloom is the publisher of Roofing Contractor Magazine.  Smith Aff. Ex. A, at 23. On October 8, 2020, the Blooms agreed to the interview, but later that same day, they abruptly withdrew.  Calzadilla Aff. ¶¶ 3–4.  When pressed to explain the reason for the cancellation, Jill Bloom admitted that she had some concerns about GAF, with which the Blooms had a business relationship.  Calzadilla Aff. ¶ 5; Smith Aff. Ex. A, at 23.

Lipinskiy characterizes these events as evidence that GAF disparaged him in violation of the settlement agreement.  Lipinskiy's accusation relies on a chain of inferences:  (1) that GAF knew about the interview (which had been scheduled for only a few hours before the Blooms canceled); (2) that GAF communicated with the Blooms about the interview; (3) that GAF induced the Blooms to cancel the interview; and (4) that GAF did so by making disparaging comments about Lipinskiy to the Blooms.

The record contains no evidence supporting any of these inferences.  There is zero evidence that GAF knew about the interview, zero evidence that GAF communicated with the Blooms about the interview, zero evidence that GAF induced the Blooms to cancel, and zero evidence that GAF induced the Blooms to cancel by disparaging Lipinskiy.  It is entirely possible that the Blooms learned about Lipinskiy's

public feud with GAF on their own—perhaps by searching the Internet or by mentioning Lipinskiy to someone else in the industry—and independently decided to cancel the interview to avoid the risk of offending GAF.  Information that supports Lipinskiy's accusation may come to light during discovery, but there is no evidence in the present record that Lipinskiy's accusation is true, and thus the Court cannot find that GAF breached the settlement agreement by disparaging Lipinskiy to the Blooms.

### b. GAF's Comments to Steve Snyder

Lipinskiy next alleges that GAF disparaged him to a roofer named Steve Snyder. Snyder operates a contracting company in Pennsylvania and is enrolled in Lipinskiy's online school.  Snyder Aff. ¶¶ 1–2.  According to an affidavit signed by Snyder, a GAF employee named Brad Whitlock told Snyder on multiple occasions that Lipinskiy "was 'biased' and that there were 'bad characters' associated with Roofing Insights."  Snyder Aff. ¶ 3.  Crucially, however, Snyder does not state *when* these comments were made, so it is impossible to know whether GAF disparaged Lipinskiy before Lipinskiy disparaged GAF.[4]

---

[4]Lipinskiy also cites a March 13, 2020 letter from his attorney to GAF's attorney, in which letter Lipinskiy's attorney complains that "several individuals have communicated to Mr. Lipinskiy that representatives of GAF have communicated their opinion of Mr. Lipinskiy concerning his alleged bias and dislike of GAF."  Smith Aff. Ex. A, at 16.  Similarly, in an October 14, 2020 letter from Lipinskiy's counsel to GAF's counsel, Lipinskiy's counsel states, "As you know, your client has a history of disparaging Dmitry Lipinskiy and Roofing Insights through its industry ties and

(continued...)

Snyder also provides a voice mail and text message as "examples" of the types of comments that Whitlock has made about Lipinskiy and Roofing Insights. Snyder Aff. ¶ 4. The voice mail is difficult to understand, but Whitlock appeared to leave the following message for Snyder:

> Yo! Hey Steve! Ha! Ironic. Uh about uh Dmitry and also a little bit about the Rodney, those guys, they're uh [garbled] . . . vice president [garbled] . . . He asked me, did you—did you look at the Roofing Insights post today on Facebook? So, I got a long, interesting story about that whole thing, 'cause I got it from the horse's mouth. I had him as a guy that wanted to be a Master—Elite Master. So. Hey, I got a call coming in, I will catch you later. See you, bye.

Snyder Aff. Ex. A. This voice mail—or at least the parts of it that the Court can understand—is not in any way disparaging, demeaning, or detrimental.

The text message is more problematic for GAF. On October 22, 2020, Whitlock texted Snyder:

> I was with another guy today that major high end roofer that out of blue brought up DL. He has some guys in his network ( not you) that have a BAD wrap. Whatever. I love GAF got good rating and he hates us . . . .

Snyder Aff. Ex. A (errors and ellipsis in original). This text requires a bit of interpretation, but it can plausibly be characterized as disparaging. "DL" appears to

---

[4](...continued)
operations." Smith Aff Ex. A, at 22. Unlike the Snyder affidavit, the letters of Lipinskiy's attorney are inadmissible hearsay.

refer to Lipinskiy and "wrap" appears to be a misspelling of "rep" (short for

"reputation").  It is unclear what "in his network" means; if it refers to employees or

close business associates of Lipinskiy, then the text could be viewed as disparaging.  But

even if the text was disparaging, it was sent on October 22—well *after* Lipinskiy posted

a slew of disparaging content about GAF.  Obviously, then, Whitlock's text message to

Snyder did not excuse Lipinskiy from complying with the settlement agreement prior to

October 22.

Lipinskiy has one further problem:  To excuse his breaches of the settlement

agreement, Lipinskiy must prove not only that GAF breached the settlement agreement,

but that the breach was material.  *See DeMarie*, 2005 WL 89403, at *4.  As noted above,

determining materiality under Delaware law is a fact-intensive inquiry, *see BioLife Sols.*,

838 A.2d at 278—an inquiry that the Court could not even begin to undertake given the

sparse nature of the present record.

To be entitled to a preliminary injunction, GAF does not need to establish that it

"will ultimately win," *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir.

2007), but only that it has a "fair chance of prevailing[,]" *Jet Midwest Int'l Co. v. Jet

Midwest Grp.*, 953 F.3d 1041, 1045 (8th Cir. 2020) (quotations omitted).  Given the

strength of GAF's evidence that Lipinskiy breached the settlement agreement, and

given the weakness of Lipinskiy's evidence that a prior breach by GAF excused his

-14-

performance, the Court finds that GAF has established a likelihood of success on the merits.

### C.  Threat of Irreparable Harm

To be entitled to an injunction, GAF must also show that it will suffer irreparable harm if Lipinskiy is not enjoined from continuing to disparage it.

There is no doubt that Lipinskiy's disparaging comments have harmed GAF. Lipinskiy's videos and posts reach tens of thousands of viewers, including roofing contractors and consumers.  Those who have commented on Lipinskiy's social-media posts have said that his disparaging posts have persuaded them not to purchase or promote GAF products.  Compl. ¶ 133; Pl.'s Mem. Supp. Prelim. Inj. 35–36.  Although the *fact* of damage is certain, the *amount* of damage would "be difficult, or even impossible" to calculate, and thus GAF's harm is deemed irreparable.  *Jet Midwest Int'l Co.*, 953 F.3d at 1046; *see also Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 569 (8th Cir. 1982) (affirming district court's finding of irreparable harm based, in part, on the determination "that it would be extremely difficult or impossible to calculate the loss in sales that would be suffered").

Moreover, there is no doubt that Lipinskiy's disparagement of GAF has damaged the company's reputation.  "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury."  *United Healthcare Ins. v. AdvancePCS*, 316 F.3d 737,

741 (8th Cir. 2002); *see also Kroupa v. Nielsen*, 731 F.3d 813, 820 (8th Cir. 2013) ("Because damage to one's reputation is a harm that cannot be remedied by a later award of money damages, the threat of reputational harm may form the basis for preliminary injunctive relief."); *Signcad Tech. Corp. v. Signcad Sys., Inc.*, No. Civ. 02-4786, 2003 WL 465801, at *6 (D. Minn. Feb. 20, 2003) ("[Movants] have shown irreparable harm in the form of damage to their reputation, which probably cannot be compensated by money damages.").  Again, the *fact* of damage is certain, but the *amount* of damage is impossible even to roughly approximate.  *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) ("Harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars.").  GAF has demonstrated that its "injuries cannot be fully compensated through an award of damages."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

Lipinskiy argues that there is no threat of *additional* harm since GAF has already been damaged by his posts.  *See Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996) (noting that irreparable harm must be imminent).  The Court disagrees.  First, Lipinskiy has continued to disseminate new disparaging content over the Internet (even after GAF moved for a preliminary injunction).  *See* Pl.'s Reply Supp. Prelim. Inj. 12 (including images of two memes posted after GAF moved for a preliminary injunction, one of which is captioned "Here you go GAF - Roofing.  Send me cease and desist for

-16-

this one too while you at it." (errors in original)).  Second, even though Lipinskiy has

removed some of the old posts from Roofing Insights' social-media pages, others

remain available and continue to harm GAF.  A preliminary injunction would prevent

harm to GAF by requiring Lipinskiy to remove old disparaging posts and by

prohibiting Lipinskiy from adding new disparaging posts.  *Cf. CDI Energy Servs. v. W.

River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009) (finding no irreparable harm because

damages had already occurred and the movant "failed to show that an injunction

would actually serve to lessen any possible ongoing damages").

Lipinskiy also argues that the liquidated-damages clause of the settlement

agreement precludes a preliminary injunction.[5]  But a liquidated-damages clause does

not preclude injunctive relief when the movant will suffer harm that cannot be fully

remedied by damages.  *See Rebsamen Ins. v. Mayo*, NO: 4:08CV00136 SWW, 2008 WL

11346216, at *6 (E.D. Ark. Mar. 31, 2008) (finding irreparable harm despite presence of

liquidated-damages clause in contract); *H&R Block Enters. v. Short*, No. Civ.06-

608(JNE/JJG), 2006 WL 3437491, at *7 (D. Minn. Nov. 29, 2006) (granting injunction

despite liquidated damages clause).

---

[5]The liquidated-damages clause assigns $10,000 in damages to each posting of a
statement or video that violates the settlement agreement.  Woodruff Decl. Ex. B, ¶ 7.

-17-

For these reasons, GAF has demonstrated that it will suffer irreparable harm

unless Lipinskiy is ordered to remove disparaging posts and not to disseminate new

disparaging content.

### D. Balance of the Harms and the Public Interest

The balance of harms clearly favors GAF.  If Lipinskiy is not enjoined, he will

continue to inflict irreparable harm on GAF in violation of the settlement agreement.  If

Lipinskiy is enjoined, he will simply have to live up to the commitments that he made

when he signed the settlement agreement.

Lipinskiy argues that a preliminary injunction will eliminate his ability to rebut

GAF's disparaging statements about Roofing Insights and him.  Again, though, there is

virtually no evidence that GAF has disparaged Roofing Insights or Lipinskiy.

Moreover, as best as the Court can tell, not one of Lipinskiy's disparaging posts

purports to "rebut" any negative statement made by GAF.  If GAF should violate its

commitment not to disparage Lipinskiy, he can seek injunctive relief from this Court.

Finally, the public interest is served by enforcing valid contracts, and thus the

public-interest factor also favors GAF.  *See Kato Eng'g, Inc. v. Hanley*, 367 F. Supp. 3d 918,

924 (D. Minn. 2018) ("The public has an interest in judicial enforcement of contracts

between private parties[.]"); *Signcad Tech. Corp.*, 2003 WL 465801, at *6 ("The public

interest is also served by enforcement of valid contractual agreements.").[6]

Having found that GAF has carried its burden on all four of the *Dataphase*

factors, the Court grants GAF's motion for a preliminary injunction.

*E. Rule 65(c)*

Finally, the Court considers the security requirement in Fed. R. Civ. P. 65(c).

Courts in the Eighth Circuit have "almost always required a bond before issuing a

preliminary injunction, but exceptions have been made where the defendant has not

objected to the failure to require a bond or where the damages resulting from a

wrongful issuance of an injunction have not been shown." *Richland/Wilkin Joint Powers*

*Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (internal citation

omitted). Both exceptions are present here. Lipinskiy has not said a word about Rule

65(c), and he has not claimed that he will incur any monetary damages as a result of the

injunction—which, after all, will simply require him to live up to his promise not to

disparage GAF. The Court therefore waives the bond requirement. *See, e.g.*, *First*

*Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 769 (D. Minn. 2018) (waiving

---

[6]Lipinskiy argues that the public interest disfavors chilling speech. But the
government is not chilling Lipinskiy's speech; Lipinskiy chose to chill his own speech
when he entered into the settlement agreement. The restrictions imposed by the
preliminary injunction do not differ in any material respect from the restrictions to
which Lipinskiy voluntarily agreed.

bond requirement when non-movant did not object and did not demonstrate potential

damages); *Nw. Bell Tel. Co. v. Bedco of Minn., Inc.*, 501 F. Supp. 299, 304 (D. Minn. 1980)

(declining to require bond given strength of movant's case and absence of damages to

non-movant, even though movant was "not impecunious").

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.   Plaintiff's motion for a preliminary injunction [ECF No. 6] is GRANTED.

2.   Defendants are ORDERED not to disparage, demean, or make any

statements that are detrimental to GAF, GAF products, or GAF

employees—whether directly or via or in conjunction with or on behalf of

any other entity or individual—in any public medium, including but not

limited to:

a.   conventional media such as newspapers, magazines, billboards,

posters, brochures, flyers, television and radio advertisements,

phone solicitations, and the like; and

b.   social media such as YouTube (including the "Roofing Insights"

YouTube Channel), Facebook (including any private trade

association and community pages on Facebook), Twitter,

Instagram, SnapChat, Pinterest, FundRazr, and any other social

media and internet websites that may now or in the future exist.

3.　　Defendants are ORDERED not to directly or indirectly prompt, request, or

direct third parties to post public comments, pictures, videos, or replies

that disparage or demean or that are detrimental to GAF, GAF products,

or GAF employees.

4.　　Defendants are ORDERED to remove from the Internet within 48 hours of

being served with this order:

a.　　all disparaging statements, videos, posts, press releases, pictures, or

replies within their control and of which they have been notified,

either in writing by GAF or by filings in this lawsuit; and

b.　　all statements, videos, posts, press releases, pictures, or replies that

violate the September 19, 2017 Settlement Agreement and Release,

whether or not defendants have received written notice of such

violations from GAF.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 23, 2020　　　　　　　 s/Patrick J. Schiltz
　　　　　　　　　　　　　　　　　　　Patrick J. Schiltz
　　　　　　　　　　　　　　　　　　　United States District Judge